Good morning. May it please the court, my name is Kari Hong and I represent petitioner Jacqueline Tyson. The parties in this case agree that this is a novel question before the courts. The novel question is will a bench trial by stipulated facts permit the retroactive benefit of the 212C waiver? The BIA said no. But the BIA said no because it read St. Cyr and Landgraf determined that the 212C waiver applied to plea agreements because there was settled expectations and reliance on the continuance of the 212C when a person pled guilty. As I understand it, the question is whether Almandares-Hernandez presents a categorical rule that applies only to guilty plea agreements. You've got six other circuits that have said it's not so limited and you're asking us to adopt a rule that would basically follow what the other six circuits have done. Is that right? I would actually contend that I'm asking you to actually follow Almandares. Okay. You want us to follow Almandares, not... Exactly. Because, I mean, the circuit split that you alluded to is whether there's objective reliance versus subjective reliance. Almandares says there is subjective reliance. The reason why the jury trial did not get the benefit of 212C is because there was no proof or assertion of actual reliance and the court would not presume it. Could I just step back? I think it would be one link before this. And that is, Ian, you don't have the aggravated felony as we now know it coming into being until 1988. Is that correct? Correct. So the whole notion that you would do something in reliance on trying to get out of an aggravated felony, you couldn't have done that beforehand. And we're talking about a 1980 stipulated bench trial. Is that right? Correct. So the question then becomes, in my mind, is you have to go back to 1980. In 1980, when she pleas, what was the maximum you'd get with this possession with intent? It could have been a deportable offense, but it was not an aggravated felony and it was not an automatic ground. And one conviction... So in other words, so that's the question, is it couldn't be an aggravated felony because that didn't, we didn't know that lingo yet in 1980. But if you get convicted in 1980 of this crime, you would still be eligible for a 212 waiver at that time, correct? Correct. Or actually, for one conviction, would not have even been necessary. Two convictions would have required a waiver, but one conviction standing alone had no adverse consequences. So then the question is, what is the reliance if you already would have been permitted to get the 212 waiver even if you'd been convicted? I'm missing the reliance because in the other cases, as I understand it, you have the Sancier group of cases. Those come up after 1988 or, you know, the law changes on the person. But here, they would have been eligible to begin with, so what are they giving up? On the actual reliance, we have a signed affidavit by Ms. Tyson in which she stated that she received accurate immigration advice that a conviction would not have adverse immigration consequences for her. Based on that understanding of the law, which was accurate, she then decided to determine and defend her case according to what would be the most favorable sentencing for her, which is why then she chose the stipulated facts, because that would the prosecutor told her that that would be able to lead to probation, which, in fact, was granted in her case. I'm sorry. Go ahead. Counselor, you're saying then you're defending that she did rely. You're saying because she talked to the lawyer, he invited, he advised her about her immigration rights, and since that was in the jurisprudence at that time, therefore she relied on it. My question is, if that's where the law was at that time, why is it necessary for the accused to rely on anything? Why don't, isn't there a presumption that everyone knows the law? Have you ever heard of that? Yes. Well, when you do your duties all day long, you don't know what laws that you are entitled to rely on as we go through our day. None of us do that. But if there is a benefit that's owing to us at that time, even if we don't know about it, why wouldn't we be entitled to it? So why are you relying on trying to prove that your client subjectively knew that she was going to be able to rely on this retroactively? Well, the reliance is that there were no immigration consequences and she made strategic, deliberate decisions in her criminal defense. No, I'm asking you why. You've told us that. Why? But at that time, she would have been eligible for a 212 waiver. Right. Why does she have to rely on that? My question is, if there's a benefit in the law and you don't know about it and you act, and then later there's a change in the law, but the law that was applicable then would apply, why do you have to know what was there that you didn't even know about? Why are you stressing her implied understanding of this benefit? I don't understand why you think that's important. So is your question that there was no reliance because she could have pursued the 212C and investigated? If her rights to pursue the 212C was in the law at that time, why do you have to prove that she knew that? Well, in order to show that she had, she made decisions in her criminal case accordingly. But I think what's significant and I think important nuance is... Why do you have to prove that she made her decision to have a stipulated facts trial relying on that when you're having trouble proving that? In other words, your case seems to be to satisfy us that she was advised that she had 212C rights even if she had a stipulated facts trial. So therefore, she had elected a stipulated facts trial. Correct. And I'm asking why do you feel it necessary to prove that she made her decision to have a stipulated facts trial relying on her apparently being told that she still had 212C rights? Making that argument on the assumption that this court is going to adopt the Amandara's test. Well, then, I understand that. If that's your position, let me ask you the next question. If the next issue we have to decide is whether a guilty plea trial is substantially the same or the same as a stipulated facts trial, what can you tell us on that? Well, the Adams case, which is decided by the Ninth Circuit, I think is very revealing. In the Rule 11 case, in the Rule 11 context, the Ninth Circuit said there is an enormous difference between stipulated facts versus a plea agreement for the purposes of the Rule 11 advisals. But there's a very, I think, persuasive concurrence by Judge Kaczynski where he said in the Rule 11 context, this makes sense, but intellectually, you cannot make a distinction between saying the magic words I plead guilty versus admitting all the facts for which the only inference is the establishment of guilt. Judge Kaczynski articulated that. I think what is significant about the stipulated facts in the situation is that Ms. Tyson admitted every single fact that showed the elements that was the basis for the importation. So you're opposing the government's contention that there is a difference and that since she didn't plead guilty, she's not entitled. Correct. Correct. And the significance is that she admitted every single fact. She admitted what the prosecutor would be able to prove, what the prosecution expert witness would be able to prove, and that was just an enormous benefit to the government, where they did not have to hire the expert. They did not have to test the expert. But what was she preserving? She already had the right for 212, whether she got the conviction or not. So what was she preserving? Well, she could not have applied in 1980 for 212C unless the Immigration Service was going to put her in proceedings if she had another conviction. One conviction alone did not put her in proceedings, which is why this did not come back to haunt her until 2005. So she was in this situation where she was told, plead guilty, it won't hurt you in the immigration. She pled guilty. It didn't hurt her in the immigration. And the settled expectation is that, or she could not anticipate that 17 years in the future, the law would radically change and make this conviction all of a sudden not only having consequences, but the most dire consequences for which there is no remedy. So I would contend that the link is that she made these strategic decisions on the assumption and the truth that it did not have adverse consequences at the time. Thank you. Thank you. May I ask you, maybe you're the one that I should have been speaking to earlier. Do you agree with the proposition that everyone is presumed to know the law? We all have heard that. I learned that in law school. Right. Isn't that a general truism? That ignorance of the law is not. It's an excuse. And that's why law is imposed, usually it's in the context of a law that's imposed against somebody. Right. Well, now, in this case, the petitioner is urging that that same rule of law be enforced against the petitioner in favor of the petitioner. Now, my question to you is, if it's good for the goose, why is it not good for the gander? In this context, in Saravia Paguada, this Court noted that a change in statutory regime alone is not sufficient to invalidate retroactive application. Well, was it applied retroactively, or wasn't it applied at the time that it was the law? Isn't that the problem? You're not going to apply retroactively to some new event on a law that's been superseded. We all understand that. But in this case, you're seeking to apply retroactively a provision of law that didn't exist when the act was committed. When the act was committed, she was entitled to that protection. So that's really what you're facing here. It's not a question of applying an old rule to new facts. It's a question of applying a rule that was in a force when the act occurred. How can you argue? Tell me why we should now, retroactively, 17 years later, change what the law said then to affect someone who made their move under that earlier law. Why should we do that? Well, and St. Cyr addressed a lot of these issues and philosophical issues and, in a very similar case, having pled to a conviction. But I don't believe St. Cyr does that, doesn't do that. They don't do it. I'm asking you why you want us to do that. St. Cyr just says that that doesn't apply to a guilty plea trial. But this wasn't a guilty. So that's why you're making an issue of guilty versus stipulated facts trial. St. Cyr, the Supreme Court in St. Cyr, discusses the importance of fair notice, reasonable reliance, settled expectation. The law continues to change. People are not always, it's not always, it can be applied retroactively. But St. Cyr helps deal with this situation of whether it's impermissibly retroactive. And this court in Armendariz and Serevia also discuss St. Cyr and this sort of whether a guilty plea is enough. And using the guilty plea as an example, those aliens who have entered into a contract with the government, have given up rights, have admitted guilt, have been convicted, have taken whatever punishment, and that's where St. Cyr and these courts have noted that that reliance, that would be unfair to them to go back and not allow them to apply for relief. But just having once been eligible for relief doesn't necessarily make them always eligible for relief. Here, the record shows that she was given the option to plead not guilty or guilty. She pled not guilty. She stipulated to the certain facts, but that really didn't bar either party from bringing in. I think one of the questions I have is that neither side addressed what I think is the fundamental issue, is that she wasn't trying to get around the immigration law at the time she entered. In other words, there was nothing for her to get around. Whereas in St. Cyr, there was something, an expectation in terms of a barrier out there that they had to overcome, and so they were trying to get around that through the procedural posture. She wasn't actually trying to get around anything. So in a way, I feel like the briefing starts too late. And it doesn't sort of take us from the beginning. I'm not sure what the legal consequences of that are. But both of you started in the middle instead of the beginning in terms of the analysis. Do you have any comment on that? And I had looked into that, too, to see what she would have been eligible for and also started looking at these other cases. And they all look at the time of including the Saravia Paguada that I believe was a ñ it started in 1988, guilty plea. And none of these cases seem to focus on exact eligibility. It's more that they had made the quid pro quo agreement with the government. They had some sort of alliance. No one has really actually what I found. Well, there's no reliance in this case, I think, which is the problem. Why do you say that? Because ñ and the difference in these cases between pleading guilty and going to trial is going to trial, they could be acquitted, they could be convicted. In this case, she could have been convicted of both counts. Opposing counsel mentioned that the two convictions would have rendered her ineligible. No, she would still be eligible in 1980 for 212, even with two. They'd have to make a discretionary decision. Right. And in these other ñ in Saravia Paguada, for example, in 1988, it was a drug conviction. And it could have been the same sort of case. In the case of St. Cyr, I believe that he pled guilty in 1996, but before there was a change in law. So he also arguably ñ and some of these other cases are like this, but I can't confidently point to them. But they didn't necessarily ñ the courts weren't focused on eligibility. And the St. Cyr and all of these cases, the Ninth Circuit cases, focused more on the reliance and that they entered into this contract with the government, they gave up rights, and that was what was made it impermissibly retroactive. But you don't think she gave up rights then? Is it ñ are you saying that they did give up things at that time to get the bargain, and therefore it's retroactive? It doesn't have any retroactivity. But in this case, somehow that's different? How is that different? She agreed to a stipulated facts trial, waive cross-examination, waive calling witnesses. Here are the facts. The facts clearly show she's guilty of possession at least. What's the difference? At a guilty plea, she is admitting guilt. It's the conviction. At this point, the judge, although it was a judge and not a jury, still had to find beyond a reasonable doubt. Prosecution still had to prove beyond a reasonable doubt, even though the jury preferred I beg your pardon, but I don't know what the prosecution ñ they didn't present any evidence. They agreed not to. So what did they have to prove? All they had to do was summarize the evidence that's in front of the judge. They didn't have to prove ñ they didn't present any evidence. And the ñ they still didn't know what the outcome would be. She could have been acquitted on both charges. She could have been convicted on both charges. In this case, the judge had the same burden. And her arguments whether a jury would have decided differently is pure speculation on why the jury would have looked at those facts and decided different. So the bench-versus-jury trial, I think, in this case, is not ñ there's less difference between the bench-versus-jury trial than the plea agreement, which this circuit and others have agreed that shows the objective reliance. Did the government ever consider, given that this was in 1980, and the circumstances in which this all came down and what Judge Orrick said and did and the circumstance she then found herself in years later, did the government ever just consider why would the United States want to deport this person? Did you think about mediation? Did you think about just dropping the whole thing? I actually checked into it recently. We have a ñ to see whether this would be eligible for prosecutorial discretion. And it's such an old case. And ñ It's based on that June 13 memo. Yeah. And there's a working group. And it's in progress. And I had checked, and it was really briefly, and they didn't have the file for this case, so couldn't ñ the drug conviction, I think, is ñ makes it less likely. But in other words, there is some possibility you could just ñ not you, but I would say. Right. Right. The department. I understand you can't make any commitment. Right. When you look at this kind of a record, and then you look at us tying ourselves up in Landgraf and St. Cyr, I just wonder in a case like this what it is that motivates the United States government in light of her conduct and longstanding here and clear evidence that, you know, she was in a very distressed situation at the time that this all occurred. Yeah. If the ñ I might want to ñ I don't think we have to wait ñ I don't think the department has to wait for the working group and regulations and guidelines to exercise its discretion. Right. And that might be something the department would want to consider. Yeah. And I had run it by them just seeing the facts of this case. And without a record, they couldn't. And just seeing the conviction was a problem. But ñ But you understand the point was that she was medically in a difficult situation. Yeah. Right. Is there no more questions? You have a minute for rebuttal. Thank you. I have three quick points. In answer to your question, Judge McEwen, I would contend that the relevant, I think, case is not St. Cyr but Landgraf. Because if IRA is going to be retroactively applied, it's fundamentally unfair not to also extend a waiver, although it was in existence in 1980, that would also apply. Because Landgraf determines retroactively based on whether the new statute would, quote, impair rights that a party possessed at the time that they acted, whether it would increase a party's liability for past conduct or impose new duties with respect to transactions already completed. And that ñ And that's closer to my analysis, although I think it's a complicated situation here. I just didn't see St. Cyr as being ñ although everybody went off on St. Cyr in the briefing, it didn't seem to me to quite fit. And so what you're saying now makes more sense to me analytically, and we'll take a look at it. And I agree that that ñ And Landgraf has these two tests, and you believe that the two tests are satisfied. Absolutely. Absolutely. And so I would contend that this is a Landgraf case for that reason. In terms of, Judge Booster, your comment about what reliance, I also do want to note that she did have a medical necessity defense that she did waive with the stipulated facts. And there was mention of the abortion. There was mention of the medication use. There was the judge recognizing that it was personal use and was not for sales, supported that that could have been brought before a San Francisco jury in 1980. And the third is that in past experiences, if the ñ I would be ñ if the court would be amenable, I'd be happy to have this case referred to mediation to give the government time to see if their supervisors would agree to settle this without needing to ñ for the court to resolve the legal issues. Well, we'll take that into consideration, but you can also talk to government counsel. Maybe they'll just agree to have that course. If that were the case, if you do agree, all you would need to do is to notify the clerk and to do that within the next week. Now, it may be that after talking to your client, they don't want to agree. And that's why I'm not going to put it on either party. But if you do agree, advise the clerk within a week, the case could go to our mediation. We might also consider independently whether it should go to mediation. Okay. Thank you. Thank you. Thank both counsel for your arguments this morning.
judges: Brewster, McKeown, Smith